UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGEL SHALOM MACMONAGLE,<br><br>                Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | NO. C16-1929-JPD<br><br>ORDER AFFIRMING THE COMMISSIONER |

Plaintiff Angel Shalom Macmonagle appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-year-old woman with a high school education and some college. Administrative Record ("AR") at 47. Her past work experience includes employment as an administrative assistant/clerk, administrative assistant/investigator of utility bill complaints, inventory and quality control/stock control

ORDER - 1

clerk, and waitress. AR at 34, 47, 66-67. Plaintiff was last gainfully employed in February 2013. AR at 47.

On February 22, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of February 17, 2013. AR at 20.[1] Plaintiff asserts that she is disabled due to Osler Weber Rendu Syndrome (also known as hemorrhagic telangiectasia or "HHT"), a tear in her vertebrae, back injury, anxiety, lumbar spine arthritis, and anxiety. AR at 50, 57, 85, 121.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 1, 19, 121, 127, 129. Plaintiff requested a hearing, which took place on April 14, 2015. AR at 40-70. On July 1, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 19-35. Plaintiff's request for review was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 21, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

---

[1] Plaintiff's date last insured for Title II benefits is December 31, 2015. AR at 24.

ORDER - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Ms. Macmonagle bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 1, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 17, 2013, the alleged onset date.

3. The claimant has the following severe impairments: disorders of the lumbar spine; hereditary hemorrhagic telangiectasia ("HHT"); affective disorder; and anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant [can] lift and carry twenty pounds occasionally and ten pounds frequently; sit about six hours and stand and/or walk about six hours in an eight hour day with regular breaks; unlimited ability to push pull within

these exertional limitations; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, and crawl; frequently kneel; avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. She can understand, remember, and carry out simple routine tasks as well as well-learned familiar complex tasks. She needs a routine and predictable work routine.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1975 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2013, through the date of this decision.

AR at 24-35.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence by giving great weight to the opinion of the non-examining state agency doctor?

2. Did the ALJ err in assessing plaintiff's RFC, and finding that plaintiff is able to sustain work on a regular and continuing basis pursuant to SSR 96-8p?

Dkt. 14 at 1; Dkt. 20 at 1-2.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

## VII. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

The record in this case contains the opinion of only one medical professional, State Agency reviewing medical consultant, Robert Hoskins, M.D., with respect to plaintiff's alleged physical limitations. Dr. Hoskins reviewed the record on December 8, 2013, and opined that plaintiff is capable of performing light level work. AR at 105-07. Specifically, he indicated that plaintiff can lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand, and/or walk for about six hours in an eight-hour workday. AR at 106. Dr. Hoskins' explanation for his opinion provided that the "[d]egree of pain alleged appears exaggerated relative to the relatively benign objective evidence from PEs and imaging. Nose bleeds are not limiting and the bleeders can be cauterized quite simply, as indicated. The degree of low back pain is not validated by imaging and has been referred to as 'lumbago.'" AR at 107.

The ALJ considered Dr. Hoskins opinion and gave it great weight. AR at 32. The ALJ noted that Dr. Hoskins reviewed the claimant's medical records and determined the claimant could perform work at a light exertional level with some postural and environmental limitations. AR at 32. The ALJ stated that she gave Dr. Hoskins' opinion great weight because "it was based on a review of all of the claimant's medical records available at the time for a comprehensive opinion of functioning, and it is consistent with the overall evidence of record. Further, the assessment as to the claimant's abilities was supported with references to the objective medical evidence such as treatment notes showing an intact gait, and the objective images." AR at 32. Finally, "the opinion is also consistent with the improvement at the pain clinic. The evidence submitted subsequent to Dr. Hoskin's (sic) review is not persuasive the claimant has any greater limitations than those accounted for in her residual functional capacity finding." AR at 32.

Plaintiff challenges the ALJ's finding that medical records submitted after Dr. Hoskins reviewed the record showed that plaintiff's functioning improved with treatment at the pain clinic. Dkt. 14 at 15. Plaintiff argues that the medical records, in fact, show that her condition had worsened.

Specifically, after Dr. Hoskins gave his opinion in December 2013, plaintiff was seen at the University of Washington ("UW") interventional radiology unit on 3/7/14 for treatment of arterial venous malformations due to her HHT condition. The treatment note provides that plaintiff's treatment provider Elizabeth Harris, ARNP, "is evaluating the patient's severe back pain, possibly associated burning along the lateral aspect of the left thigh..." AR at 399.[4] The UW neurosurgery department then treated plaintiff for her back pain on May 1, 2014. AR at 493. Plaintiff described her back pain as acutely worse in frequency and intensity. AR at 493. Plaintiff reported feeling tingling and burning in the left thigh and taking Vicodin in addition to Gabapentin. AR at 493. Plaintiff reported that the pain felt very disabling, and she had difficulty keeping her house up and cooking meals. AR at 493. The physicians recommended "[she] continue PT, avoid increases in narcotics, and [further recommended] a pain special referral for help with her chronic symptoms." AR at 495. Thus, plaintiff was referred to a pain clinic. AR at 485, 487. The neurosurgery notes also provide that plaintiff had tried physical therapy (although not in the past year), TENS unit, ice and heat, lidocaine patches, exercising, NSAIDs, muscle relaxants, and narcotics, but none of these provided a large amount of benefit. AR at 487.

The neurosurgery department notes indicate that plaintiff's May 2014 MRI of the lumbar spine showed degenerative changes of the L4-5 and L5-S1 levels, most prominently at

---

[4] The treatment note also indicated that plaintiff "did undergo a recent spine MRI, results not available today." AR at 399.

ORDER - 8

L4-5 with a "small tear of the posterior annulus ring." AR at 487. However, there was no evidence of severe central spinal stenosis or neural foraminal narrowing or nerve root impingement. AR at 487. Plaintiff was advised that surgical intervention would likely not improve her back pain, and "it is important that [plaintiff] exhaust conservative therapies." AR at 487.

Plaintiff was seen at the Mount Baker Pain Clinic by Dr. Brent Richardson on August 4, 2014. AR at 481. On examination, plaintiff had tenderness in the lumbar spine and positive straight leg raise on the left. AR at 483. The Faber test, which is used to assess symptoms related to the sacroiliac and hip joints, was positive bilaterally. AR at 483. Dr. Richardson diagnosed low back pain, lumbar radiculopathy, degeneration of lumbar disc, and lumbar arthritis. AR at 483.[5] Dr. Richardson noted that plaintiff "has had L4 left sided radicular pain and some findings consistent with [sacroiliac joint dysfunction] pain as well." AR at 483. Dr. Richardson recommended a left L4-5 steroidal injection, which she received on August 25, 2014. AR at 479-80.

Chart notes from the pain clinic after the initial visit indicate the clinic tried various approaches to treatment, including prescribing Percocet, additional epidural steroid injections, hydromorphone, low-dose methadone, and massage therapy. AR at 443, 446-452, 458-59, 460, 462, 467, 469, 474. Plaintiff reported that the steroid injections stopped providing relief after approximately two weeks. AR at 458, 462. In November 2015, plaintiff reported pain of 8/10 and 10/10, AR at 456, and low-dose methadone was prescribed. AR at 458. After plaintiff was put on low-dose methadone, her pain control improved. AR at 446, 448, 452.

---

[5] Plaintiff argues that when Dr. Hoskins reviewed the medical record, he did not have these diagnoses of lumbar radiculopathy, positive straight le raise, and positive Faber test. Dkt. 14 at 7. The only diagnosis he noted was "lumbago," which is an umbrella term for low back pain. AR at 107.

ORDER - 9

1   Plaintiff's medical providers finally settled on a combination of methadone, oxycodone, and
2   cyclobenzaprine as plaintiff's prescribed therapy. AR at 439. Plaintiff's last visit in the record
3   was on March 24, 2015, and plaintiff indicated that until she very recently "tweaked" her lower
4   back, her pain had been better controlled with the current combination of medications. AR at
5   439.

Plaintiff contends that by the time the ALJ issued her decision on July 1, 2015, Dr. Hoskins' December 2013 opinion was stale or outdated. Dkt. 14 at 8. Specifically, "no medical experts had reviewed the evidence from the Neurology department at the University of Washington and the Mount Baker pain clinic." Dkt. 14 at 8. Although the ALJ stated that Dr. Hoskins' opinion was "consistent with her improvement at the pain clinic," plaintiff argues that "it is not certain why this is the case. Various medications and injections had failed and the claimant had finally been put on methadone." *Id.* Plaintiff argues that "the record indicates that, despite treatment at the pain clinic, her condition would wax and wane. The conclusion that the pain clinic records support Dr. Hoskins' opinion that the claimant can perform light work calls for speculation" by the ALJ. *Id.* Plaintiff argues that she is not asking the Court to reinterpret the medical evidence, but find that the ALJ erred by concluding that Dr. Hoskins' opinion was consistent with the later pain clinic records without the opinion of a treating, examining, or even non-examining source. *Id.*

The Commissioner responds that the ALJ did not err in this case, because she reviewed and discussed the entire record (including all the treatment records that post-dated Dr. Hoskins' opinion (AR at 29-31)), and reasonably concluded that the evidence submitted after Dr. Hoskins' review was "not persuasive [plaintiff] has any greater limitations than those accounted for in her RFC finding." AR at 32. The Court agrees.

ORDER - 10

The ALJ discussed the objective medical evidence pertaining to plaintiff's back pain in great detail. AR at 29. For example, the ALJ discussed plaintiff's February 2013 MRI, which showed "no critical findings." AR at 29, 256. In addition, the ALJ noted how plaintiff had reported a gradual onset of low back pain "for the past two weeks" in February 2013, but her doctor noted that she had not recently seen plaintiff as would reasonably be expected if the claimant had been having difficulty working due to back pain. AR at 39, 352-53. Plaintiff had muscle spasms, moderate vertebral point tenderness, and limited range of motion upon examination, and was prescribed a muscle relaxant. AR at 353.[6] During an April 2013 appointment with an orthopedic provider, plaintiff had decreased range of motion but full strength and a negative straight leg raise. Her x-rays and MRI were reviewed, and only a conservative course of physical therapy and regular walking were recommended. AR at 29 (citing AR at 384). The ALJ noted that in 2014, an updated MRI was performed of plaintiff's lumbar spine, and the MRI again showed only degenerative changes of the L4-5 and L5-S1 with a small tear of the posterior annulus ring. However, no evidence of critical central spinal stenosis, critical narrowing of the neural foramina, or nerve root impingement. AR at 29 (citing AR at 416). Thus, the ALJ reasonably concluded that objective imaging in this case showed that plaintiff's back condition had not significantly worsened since Dr. Hoskins reviewed the evidence, although plaintiff had received a more definitive diagnosis of the origin of her chronic back pain or "lumbago." AR at 32.[7]

---

[6] The ALJ further noted that although plaintiff had been prescribed a TENS unit, which she stated actually eradicated her pain compared to pills, but she had not yet purchased one. AR at 29 (citing AR at 379). Plaintiff also self-discontinued physical therapy and was medically advised to resume. AR at 29 (citing AR at 379).

[7] The ALJ also found that plaintiff's subjective complaints (which were inconsistent with Dr. Hoskins' opinion) were not consistent with the record evidence, a finding that plaintiff has not challenged in this case.

ORDER - 11

The ALJ did not err by finding that Dr. Hoskins' opinion was consistent with plaintiff's improvement at the pain clinic over time. AR at 32. The ALJ noted that plaintiff had established care at the pain clinic in August 2014, and summarized the various medications and treatments plaintiff received there for her back pain, including steroid injections in the lumbar spine. AR at 30. The ALJ noted that when plaintiff reported worsening pain, she was switched to methadone and "the claimant soon reported improved pain averaging 4/10 during the week, and that 60% of her pain symptoms were relieved with treatment. She again denied side effects." AR at 30 (citing AR at 452). The ALJ noted that, "the claimant continued to report good pain relief that improved her functioning. In fact, by January 2015, the claimant reported 90% of her pain symptoms were relieved." AR at 30 (citing AR at 444, 446-48, 450). Although plaintiff reported some worsening low back symptoms in March 2015, at that time her drug screen indicated that she was not following her prescribed regimen because diazepam was detected and she did not have therapeutic doses of methadone. AR at 30 (citing AR at 436). The Court notes, however, that plaintiff still estimated "80% of [her] pain symptoms were relieved with current therapy" during her March 2015 visit. AR at 436.

Based upon this evidence, the ALJ could reasonably conclude that "the overall evidence shows her back symptoms are not as severe or limiting as alleged, and medications/treatment has alleviated her symptoms." AR at 30. Moreover, the ALJ noted that although plaintiff "has some waxing and waning of symptoms from her back, most objective findings including the MRI simple (sic) do not support the degree of debilitation alleged by the claimant." AR at 30.[8] Contrary to plaintiff's contention that Dr. Hoskins' assessment was

---

[8] The ALJ further noted that plaintiff's "providers advised her to walk and go to physical therapy, suggesting she is not as functionally limited as alleged or it is self-imposed." AR at 30.

ORDER - 12

"stale" and that the ALJ erred by giving weight to Dr. Hoskins' opinion when he did not have access to many records regarding treatment for plaintiff's back condition, the ALJ could reasonably conclude that Dr. Hoskins' opinion was properly "supported by references to the objective medical evidence such as treatment notes showing an intact gait, and the objective images. The opinion is also consistent with her [subsequent] improvement at the pain clinic." AR at 32. Plaintiff does not challenge the ALJ's finding that her symptom allegations were not consistent with the record, AR at 28-31, and therefore plaintiff is offering an alternative interpretation of the evidence that rests on her subjective complaints that the ALJ discounted. As noted above, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Finally, although plaintiff notes in her "Relief Requested" section that the ALJ should "reassess the claimant's RFC (including a consultative physical examination)," she fails to articulate any argument in support of this relief. *See* Dkt. 14 at 1-2. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not shown that either of these conditions were satisfied in this case, despite the fact that plaintiff failed to submit a medical opinion from a treating or examining physician regarding her functional limitations. Accordingly, plaintiff has not shown any error by the ALJ in adopting Dr. Hoskins' opinion in this case, or failing to order a consultative examination.

B. The ALJ Did Not Err in Assessing Plaintiff's RFC

Plaintiff contends that the ALJ erred by adopting the vocational expert's opinion that she could perform light work because the record indicates that she was missing a lot of work

ORDER - 13

and, in the end, was not working 40 hours per week due to her health issues at her last job in 2013. Dkt. 14 at 13 (citing AR at 205). Plaintiff further asserts that the ALJ did not make any findings regarding the claimant's ability to sustain work in the RFC findings, such as explaining whether plaintiff would be expected to miss no work at all (and why). AR at 26. Specifically, plaintiff testified that her back pain at her most recent job was so bad that she could not sit for long, and that she missed work about three days per month for various health reasons such as fatigue. AR at 48.[9] The record contains plaintiff's attendance records from her last job, AR at 288-343, as well as an August 2013 order issued by an ALJ with regard to plaintiff's unemployment claim for May through July 2013, when plaintiff had reported a non-industrial back injury and used all of her FMLA leave. AR at 204-05.[10] Plaintiff asserts that the ALJ erred by giving "no weight" and "limited weight" to the attendance records and ALJ's decision, respectively, on the grounds that the records do not provide a detailed opinion of function from an acceptable medical source, AR at 33, when the RFC must be based on all the relevant evidence in the case record including work evaluations. Dkt. 14 at 13 (citing SSR 96-8p).

---

[9] Plaintiff's most recent job was a full-time position as a commercial representative for a waste management company, and she spent her day on the phone to "set up dumpsters and roll-off, large roll-off containers for construction companies and small business." AR at 47-48.

[10] The order suggests that "at some point, not specifically known by the witnesses, claimant's doctor approved claimant's return to work on a severely reduced schedule of 9 hours a week. The employer allowed claimant to work the three days a week, three hours daily for two weeks, but then told her that they could not accommodate that schedule any longer." AR at 205. The order further indicates that "it is very unlikely she was able to work during the weeks from the date the claim was opened in June, even to present." AR at 206. Plaintiff also points to a chart note from March 2013 documenting plaintiff's subjective self-report to her provider that she "can't sit for 8 hours/ day as required by work," AR at 377, presumably to corroborate her statements to the ALJ that she was unable to work between May and July 2013.

Plaintiff has not shown any error by the ALJ in assessing plaintiff's RFC in this case. The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at 1. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily activities; lay activities; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from work attempts; need for structured living environment; and work evaluations. SSR 96-8p.

Here, the ALJ reasonably included work on a regular and continuing basis in the RFC finding. AR at 26 ("…sit about six hours and stand and/or walk about six hours in an eight hour day with regular breaks…"). Although plaintiff argues that her attendance records from her last job in 2013 should be interpreted as proof of her inability to work full-time in any job, because she missed work three times per month for various health reasons, it is not entirely clear from these records why plaintiff was absent on any given day. AR at 288-343. The ALJ properly considered this evidence relating to plaintiff's prior work, but reasonably concluded that this attendance report was not entitled to great weight because it "does not provide a detailed opinion of functioning from an acceptable medical source" or "objective medical evidence regarding an impairment." AR at 33. Moreover, the ALJ found that the fact that plaintiff "had attendance issues at her past job, does not mean she could not perform other work that considers her limitations from her severe impairments." AR at 33. As noted above, the ALJ considered and discussed this evidence and even agreed with plaintiff that she could

not perform her past work, but nevertheless found that there were other jobs that plaintiff was capable of performing because they would accommodate her credible limitations. AR at 34-35.

Finally, the ALJ also provided a detailed discussion of the decision from the State Employment Security Department denying plaintiff's application for unemployment compensation. AR at 33 (citing AR at 204-11). The ALJ reasonably gave this evidence little weight because the ALJ was not "an acceptable medical source, and it is unknown what medical evidence the judge reviewed. The judge did not reference any objective medical findings to explain why the claimant could not work." AR at 33. In addition, the ALJ noted that "this agency uses different criteria to assess claims, and our evaluation process does not stop at whether or not the claimant could perform her past work." AR at 33. Thus, although the ALJ concluded that plaintiff was not "medically ready to return to work" for the period she claimed benefits between May 23 and July 18, 2013, the ALJ found the evidence to have limited utility in this case, where the inquiry is whether plaintiff was disabled "for twelve continuous months, and the claimant herself reported she might have been able to return to work at her former job all day in August 2013." AR at 33.[11] Although plaintiff alleges that she is unable to sustain work at the level found by the ALJ – sitting up to six hours with regular breaks (AR at 26, 34) – the ALJ is not required to include evidence in the RFC finding that has been properly discounted. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). As noted above, the ALJ rejected plaintiff's subjective statements as inconsistent with

---

[11] The ALJ also noted that the decision was "notable for the fact that the claimant's employer argued there was a lack of medical evidence to support the claimant's need for medical leave. This is consistent with the overall evidence that shows, even when the claimant had insurance, there is minimal evidence of treatment, which belies the alleged severity of her conditions." AR at 33.

ORDER - 16

the record, and plaintiff has not challenged that finding in this case. Accordingly, plaintiff has not shown any harmful error by the ALJ in assessing her RFC.

VIII. CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

DATED this 11th day of August, 2017.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
Chief United States Magistrate Judge